[No. 1324.]

## THE STATE OF NEVADA, RESPONDENT, v. SAMUEL G. DEPOISTER, APPELLANT.

CRIMINAL LAW—RAPE—ATTESTATION OF SIGNATURE TO COMPLAINT.—
It is not necessary that a signature to a criminal complaint, executed
by the complainant's mark, should be attested by a subscribing wit-
ness, when the magistrate certifies upon the complaint that it was
subscribed and sworn to in his presence.

IDEM—PROOF OF EVIDENCE TAKEN AT PRELIMINARY EXAMINATION.—
At the trial on an indictment the parol testimony of the committing
magistrate and of the clerk who wrote the testimony at the prelimin-
ary examination is admissable to show that the depositions were
taken and the examination had in the mode and according to the re-
quirements of the law.

IDEM—SIGNATURE TO DEPOSITIONS—MERE INFORMALITIES.—The use of
the word "signature" instead of the word "mark" by the magis-
istrate, and the misplacing of the words "witness to the above signa-
ture" by the magistrate below his jurat, are mere informalities.

IDEM—IMPLIED WAIVER OF PRIVILEGED COMMUNICATIONS.—Section
3406, Gen. Stat. of Nev. provides, "that a licensed physician or sur-
geon shall not, without the consent of the patient, be examined as a
witness as to any information acquired in attending the patient which

was necessary to enable him to prescribe or act for the patient."
*Held*, that such consent may be either express or implied, and that
when the parents of a child institute criminal proceedings charging
a defendant with committing rape upon the child and are principal
witnesses against him, testifying to the nature of the injury and ail-
ment for which the physician prescribed, a waiver of the protection
which the law gives to the confidential information acquired by the
physician will be implied. (Bigelow, J., dissenting.)

IDEM—FAILURE TO RECORD VERDICT—NOT PREJUDICIAL.—The filing of
the verdict by the clerk instead of recording it before he reads it to
the jury will not invalidate it, when it is not claimed that the defend-
ant was injured thereby or that the verdict is not the one upon which
judgment was pronounced. Such irregularity comes within the
statute which provides, " neither a departure from the form or mode
prescribed by this act in respect to any pleadings or proceedings, nor
an error or mistake therein, shall render the same invalid, unless it
have actually prejudiced the defendant, or tended to his prejudice in
respect to a substantial right." Gen. Stat. 4469.

IDEM—RAPE—PENETRATION—PROOF REQUIRED—The slightest proof of
penetration will justify submitting the question to the jury and
such proof can be inferred from circumstances. In this case there
was proof of penetration. (Bigelow, J., dissenting.)

APPEAL from the District Court of the State of Nevada, Hum-
boldt County.

*A. L. Fitzgerald*, District Judge.

The facts sufficiently appear in the opinion.

*M. S. Bonnifield*, for Appellant.

I.   The depositions were neither signed nor authenticated as
required by law, and their admission in evidence was error
prejudicial to defendant.

II.   The court erred in admitting parol testimony to show
that the depositions were regularly taken.   The record of the
proceedings at the preliminary examination itself should show
compliance with the statutory requirements.

III.   The verdict was not recorded as required by law, and
until so recorded was without force or validity.   (2 Thompson
on Trials, 2635; *Bishop* v. *Mugler*, 33 Kan. 145; *Root* v *Sher-
wood*, 6 Johns, N. Y. 68; Proff. Jury Trials, 460.)

IV.   There was no proof of penetration.   At most, the proof
shows no more than an attempt to commit rape.   The authori-
ties all agree that penetration is necessary to constitute rape.
(2 Bishop Crim. Law, 6th. Ed. 1132.)

---

*The Attorney General,* for Respondent.

I.   Defendant having questioned them, it was entirely competent to prove by parol testimony the occurrence of facts at the examination which were not apparent of record.   It was proven by competent evidence that the depositions were properly taken and that defendant was accorded every legal right.

II.   The objection to the testimony of the physician is not well taken.   The exemption of physicians from testifying to privileged communications applies solely to civil procedure and has no relation to criminal procedure.

By the Court, MURPHY, J.:

The defendant was indicted, tried, and convicted for the crime of rape upon the person of Bertha May Sadler, of the age of about seven years.   The appellant contends that the judgment should be set aside, and a new trial granted, on the following grounds:   *First,* That the court erred in permitting the prosecuting attorney to read to the jury the complaint upon which the warrant of arrest was issued, and the depositions of Bertha May Sadler and Lou Alexander.   Because no complaint was laid before the magistrate of the commission of a public offense; the magistrate did not examine, on oath, the complainant or prosecutor, nor any witness, and did not require the deposition of any witness to be reduced to writing and subscribed by the witness, or otherwise; it does not appear that any such examination was made or any such deposition taken; the alleged complaint is not signed by the complainant; his alleged mark is not witnessed as required by law, and is not witnessed at all.   The complaint is sufficient in form and substance—it states the title of the court, the name of the party accused, and the nature of the offense charged in ordinary and concise language, and demands the issuing of a warrant for the arrest of the party named therein.

The other objection to the complaint, is, that the party signing his name to the complaint by making his mark, leaving the name itself to be written by another hand, must have his signature attested by a subscribing witness.   The complaint is made in the presence of and filed with the magistrate for his information, and if he is satisfied that a crime has been committed it is his duty to issue a warrant for the arrest of the party named

therein, and to notify the accused of the nature of the charge, and the name of the party making the same. The complaint appears to have been made out by or in the presence of the magistrate, the complainant signing the same with his mark, some one else writing the full name of complainant. He then swore to the same, and the magistrate certifies that the same was subscribed and sworn to before him, etc. We think this is all that the law requires.

The case of *Commonwealth* v. *Sullivan*, 14 Gray 98, is directly in point, wherein the court said: " But it by no means follows that the signature is not valid without such attesting witness * * * and in reference to complaints to a justice of the peace, presented by the complainant personally, and accompanied by taking the usual oath to the complaint before such justice, that the same is true, there can be no such necessity. The party virtually acknowledges the complaint as duly signed by him. This must clearly obviate all necessity of further proof of the signature." (See, also, *Commonwealth* v. *Quin*, 5 Gray 478.) The magistrate is not compelled to examine other witnesses than the complainant before issuing his warrant of arrest. All that the statute requires is that the magistrate should be satisfied that a crime had been committed within his jurisdiction.

The objections urged against the reading of the depositions of Bertha May Sadler and Lou Alexander to the jury are as follows: " That they were irrelevant, immaterial and incompetent, and that the proper foundation had not been laid for their introduction, and particularly in this: It does not appear that at the examination witness Bertha was examined in the presence of the defendant, or that he had the privilege of cross-examination; it does not appear that the testimony of said witness was read over to her, and corrected, or that she was given an opportunity to correct the same as she might desire; it does not appear that said Bertha subscribed her alleged deposition, or that she refused to sign it. No reason is assigned for such refusal, if any. The alleged mark of said Bertha to said deposition is not witnessed as required by law, or at all. Said alleged deposition is not duly authenticated, is not authenticated at all. Neither of said papers have the slightest earmark of a preliminary examination, or of having any connection therewith. They are not certified to be, nor do they purport to be, any part or have any connection with a prelimi-

nary examination." The objections to the introduction of the deposition are without any real merit.

Section 4036, Gen. Stat. reads: " The witnesses shall be examined in the presence of the defendant, and may be cross-examined in his behalf. If either party so desire, the examination shall be by interrogatories, direct and cross; *provided*, by consent of parties, the testimony may be reduced to writing in narrative form. The testimony so taken may be used by either party on the trial of the cause, and in all proceedings therein, when the witness is sick, out of the state, dead, or when his personal attendance can not be had in court. When the testimony of each witness is all taken, the same shall be read over to the witness, and corrected, as may be desired, and then subscribed by the witness; or, if he refuses to sign it, the fact of such refusal, and any reason assigned therefor, must be stated, and the same shall be tested by the magistrate. And such testimony, so reduced to writing, and authenticated according to the provisions of this section, shall be filed by the examining magistrate with the clerk of the district court of his county. * * *" The caption of said deposition is as follows: " In the justice court, Union township, Humboldt county, Nev. The State of Nevada, plaintiff, vs. Samuel G. Depoister, defendant. Bertha May Sadler, being duly sworn, deposes and says." Then follows the testimony given by question and answer, concluding with the signature and jurat, as follows. " Bertha May Sadler, her X mark. Subscribed and sworn to before me this 6th day of August, 1889. E. S. Archer, J. P., and witness to the above signature." The court, over the objections of the defendant, permitted the prosecuting attorney to place on the stand E. S. Archer, the committing magistrate, and W. C. Owens, who wrote down the testimony at the preliminary examination, and they both testified to the fact that the complaint was read over to the defendant; that the depositions were taken and reduced to writing in the presence of the defendant, and that he was given an opportunity to cross-examine the witness Bertha May Sadler; that the testimony was read over to her, and she was given an opportunity to correct the same; and that she signed the same by making her mark in the presence of the witnesses, and the same is attested by the committing magistrate as a witness to her signature, and the mere fact that the magistrate wrote the word, " signature," instead of " mark," or that he has writ-

ten the words " witness to the above signature " below the jurat, is a mere informality. ( *Webb* v. *State*, 21 Ind. 237.)

The same is true as to the deposition of Lou Alexander, with the addition, that it does appear from the record that the defendant did cross-examine this witness while on the witness stand at the preliminary examination.

At common law the certificate of a public officer was not receivable in evidence. The provision making the certificate of the justice admissable is founded upon the reason of statutes authorizing proof of public documents by copies certified by the officer having their custody. " The reason of admitting a copy to be evidence is the inconvenience to the public of removing records which may be wanted in two places at the same time." (1 Starkie, Ev. \*251.) And so it may be said, as one of the reasons for making the certificate of the justice admissible, that inconvenience to the public would result by compelling his attendance as a witness at a time when the duties of his office required his attention. The purpose of the statute is to afford a reasonable and convenient method of proof. The statute does not in terms exclude other evidence, and we see no reason why the common-law method of proof should not be admitted. Statutes containing provisions similar to those of section 4036 have existed for the last three hundred years in England, and have been generally adopted by the states of this Union, and we are not aware that the established rules of decision of any court construes them as abolishing the common-law mode of proof.

In the case of *People* v. *Carty*, 77 Cal. 214, upon the trial, the prosecution offered in evidence the short-hand reporter's transcript of his notes, of the testimony taken before the committing magistrate. The certificate attached to this transcript was to the effect that it was a " full, true, and correct transcript of the short-hand notes taken by me herein." One of the objections on the trial was that the document was not properly certified. The reporter was then permitted to be examined as a witness, and he testified " that the document was a correct transcript of the notes taken by him of the testimony and proceedings at the examination before the magistrate." The supreme court held that the document was not admissible, not because the reporter was sworn as a witness to correct his certificate, but because, after he was placed upon the stand, he did not refresh

his memory from the writing, and then testify as to what occurred at the examination, and that the notes as taken by him at such examination were correct. He having merely testified as to the correctness of the transcribing, this was not sufficient.

In the case of *People* v. *Dowdigan*, 67 Mich. 96, where the reading. of a deposition to the jury was objected to on the grounds that the same had not been read over to the subscribing witness, the defendant was permitted to place the justice on the stand as a witness to try and establish the fact, but he could not swear whether it had been read over to her or not, yet the deposition was admitted. In England it is the custom that when a party signs his name to a deposition taken before a magistrate in a criminal prosecution the proof of the signature may be given by any one that was present at the time of such examination; but when the party signs the deposition with his mark, it must be proved that the deposition was correctly read to the witness, which proof must be made by the magistrate or his clerk. (*Rex* v. *Chappel*, 1 Moody & Robinson 395.)

In the case of *State* v. *Jones*, 7 Nev. 415, the court said: " When a deposition is offered, it is true, the person offering it should accompany it with proof that it was taken in conformity with the statute; and, if the proper objection be made, it should not be admitted until such preliminary proof is made;" meaning thereby that if the committing magistrate had not attached his certificate to the deposition, that the state could have the same corrected, or the prosecution might place witnesses upon the stand to show that the law had been complied with.

In Texas, where the statute in relation to the taking of depositions on preliminary examinations is similar to our own, in the case of *Clark* v. *State*, the supreme court said: " In our opinion there is no merit in defendant's third and fourth bills of exception relative to the reproduction of the testimony of C. W. Churchwell, which had been reduced to writing upon the examining trial, the witness having subsequently died. The justice of the peace was properly permitted to state the circumstances attending upon the taking of the deceased witness' testimony, and to identify the same." (28 Tex. App. 195.)

In the case of *Farnsworth Co.* v. *Rand*, 65 Me 21, the defendant had levied on property of the plaintiff. The statute of Maine required that the collector should take the oath of a collector. There was no record evidence that the defendant had

taken such oath, although he had been sworn in as a constable. The court held that in the absence of record evidence parol proof was competent, to prove that the oath had been taken by defendant, before making the levy.

In the case of *People* v. *Moore*, 15 Wend. 421, the justice of the peace was permitted to go upon the stand and testify as to statements made in his court, which statements had been reduced to writing. The defendant then offered to introduce the deposition taken on the examination. The district attorney objected to its introduction, for the reason that it did not appear to have been correctly taken The justice testified that the deposition was taken in pursuance of the statute, but whether it was read to the witness or not he did not recollect. The objection was sustained. On appeal to the supreme court the judgment was reversed, the court saying: "When the justice swears that the deposition was taken in pursuance of the statute, the presumption is that it was regularly and properly taken. The law presumes every public officer does his duty until the contrary appears. The deposition must therefore be considered properly taken until some irregularity is shown." No particular form is prescribed by law for the certificate of the magistrate to testimony taken before him on a preliminary examination, and a substantial compliance with section 4036 is all that is required, and an error or omission in the certificate can be cured by parol testimony. (*Draper* v. *Snow*, 20 N. Y. 332.)

Objection is made to the admission in evidence of the testimony of Dr. Hanson, the physician who attended the child during illness consequent upon the assault. The statute provides that "a licensed physician or surgeon shall not, without the consent of the patient, be examined as a witness as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient." (Section 3406, Gen. Stat. Nev.)

It is conceded, as shown by the record, that either the child or her mother could have given the consent required by the statute. The consent may either be express or implied. Upon this question the supreme court of the United States, in *Blackburn* v. *Crawfords*, 3 Wall. 194, said: "We think it [the consent] as effectual here by implication as the most explicit language could have made it. It could have been no clearer if the client had expressly enjoined it upon the attorney to give

this testimony. * * * A different result would involve a perversion of the rule, inconsistent with its object, and in direct conflict with the reason upon which it is founded." Applying these principles, the facts of this case establish consent by implication.

In the present case the prosecution was inaugurated by the parents of the child. Her stepfather laid the complaint before the justice. Her mother and herself were the principal witnesses. The mother testified, among other things, to the statements of the child charging the defendant with the commission of the offense, and to her physical condition, which led to the calling of the physician. Her testimony was of a nature to make public all matters bearing upon the injuries and sufferings of the child as affected by the defendant's acts. It practically disclosed the general nature of the complaint for which the physician prescribed. If any injury could be inflicted by testimony of this nature it was done by the mother's testimony, and, the facts having once been exposed, it would seem that there was no reason why the physician's knowledge should be treated as confidential. At all events, the facts stated show a disposition on the part of the stepfather and the mother to prosecute the defendant, and in doing so to waive the protection which the law gave to the confidential information acquired by the physician. It is true, defendant's mother testified that the mother of the child declared she would not again prosecute the defendant; but no other fact was disclosed tending to show such a disposition. The testimony of the physician was introduced in evidence by the prosecution before the defendant's mother testified in his behalf. The court, therefore, knew nothing of the alleged disinclination to prosecute when the physician's testimony was admitted, and no motion to strike it out was ever made.

In the case of *McKinney* v. *Railroad Co.*, 104 N. Y. 354, on the first trial of the case, the plaintiff called the physician who had attended her and treated her for the injuries received, and he testified fully as to her injuries. On the second trial, after the plaintiff had closed her case, not having placed the physician on the stand as a witness in her behalf, the defendant called on Chapman, a physician, and proposed to prove by him the injuries claimed to have been suffered by the plaintiff in consequence of the collision in question, as learned by him upon a

personal examination of the plaintiff when visiting her as a patient. "The plaintiff objected, upon the grounds that the information acquired by a physician while attending a patient was privileged, and could not, therefore, be admitted against the plaintiff without her consent." "This objection was sustained, the evidence excluded, and the defendant excepted." Ruger, C. J., speaking for the court, said: "Such evidence is made incompetent at the option of the patient only, and in case she neglects at any time to remove the seal from the lips of the witness, the evidence may properly be received. * * * The patient cannot use this privilege both as a sword and a shield, to waive when it inures to her advantage, and wield when it does not. After its publication no further injury can be inflicted upon the rights and interests which the statute was intended to protect, and there is no further reason for its enforcement. The nature of the information is of such a character that when it is once divulged in legal proceedings, it cannot be again hidden or concealed. It is then open to the consideration of the entire public, and the privilege of forbidding its repetition is not conferred by the statute. The consent having been once given and acted upon c nnot be recalled, and the patient can never be restored to the condition which the statute, from motives of public policy, has sought to protect. * * * The object of the statute having been voluntarily defeated by the party for whose benefit it was enacted, there can be no reason for its continued enforcement in such cases." The judgment was reversed. (*Johnson* v. *Johnson*, 14 Wend. 641.)

In the case of *Pierson* v. *People*, 79 N. Y. 432, the defendant was charged with the crime of murder, by poisoning one Withey. Dr. Coe, a practicing physician, was called to see him by the prisoner; and he examined him and prescribed for him. On the trial the doctor was called as a witness for the people, and the following question put to him : "State the condition in which you found Withey at that time, both from your own observation and from what he told you. The prisoner's counsel objected to this question, on the ground that the information which the witness obtained was obtained as a physician, and that he had no right to disclose it; that the evidence offered was prohibited by the statute. The court overruled the objection, and the witness testified as to the condition in which he found Withey from an examination then openly made in the

presence of Withey's wife and the prisoner, and as he also learned it from Withey, his wife and the prisoner." (The court then quotes the statute of New York, which ours is copied from.) "Such evidence was not prohibited at common law. The design of the provision was to place the information of the physician, obtained from his patient in a professional way, substantially on the same footing with the information obtained by an attorney professionally of his client's affair. The purpose was to enable a patient to make such disclosures to his physician as to his ailments, under the seal of confidence, as would enable the physician intelligently to prescribe for him, to invite confidence between physician and patient, and to prevent a breach thereof. * * *

It could not have been designed to shut out such evidence as was here received, and thus to protect the murderer rather than to shield the memory of his victim. If the construction of the statute contended for by the prisoner's counsel must prevail it will be extremely difficult, if not impossible, in most cases of murder by poisoning, to convict the murderer. Undoubtedly such evidence has been generally received in this class of cases, and it has not been understood among lawyers and judges to be within the prohibition of the statute. * * *

The plain purpose of this statute, as in substance before stated, was to enable a patient to make known his condition to his physician without the danger of any disclosure by him, which would annoy the feelings, damage the character, or impair the standing of the patient while living, or disgrace his memory when dead * * * that the purpose for which the aid of this statute is invoked, in this case, is so utterly foreign to the purposes and objects of the act, and so diametrically opposed to any intention which the legislature can be supposed to have had in the enactment, so contrary to and inconsistent with its spirit, which most clearly intended to protect the patient, and not to shield one who is charged with his murder, that in such a case the statute is not to be so construed as to be used as a weapon of defense to the party so charged, instead of a protection to his victim." (1 Starkie, Ev. *40; *Hewitt* v. *Prime*, 21 Wend. 79; *Renihan* v. *Dennin*, 103 N. Y. 580.)

The objection of the defendant to the verdict of the jury is not tenable. It appears from the record that when the jury returned into court, they were asked by the judge if " they had

agreed upon a verdict." They answered that they had, and at the same time the foreman handed to the judge the paper upon which the verdict was written, who in turn handed it to the clerk, with instructions to record the same, but instead thereof, the clerk filed the paper, and read therefrom to the jury, and the clerk asked each of said jurors if that was their verdict as read by him, and each of said jurors, answering for himself, said it was. Would a mere act of making a copy of the verdict, in pencil writing, in the rough minutes of the court, make it any more sacred? It is not claimed that the defendant was in any manner injured by the receiving, filing, and reading of the verdict, and it is not claimed that the verdict as returned by the jury is not the one upon which judgment has been pronounced by the court. (*People* v. *Gilbert*, 57 Cal. 97.)

Section 4469, Gen. Stat., reads: "Neither a departure from the form or mode prescribed by this act, in respect to any pleadings or proceedings, nor an error or mistake therein, shall render the same invalid, unless it have actually prejudiced the defendant, or tended to his prejudice in respect to a substantial right."

The contention of appellant's counsel that the verdict is not sustained by the evidence, on account of the absence of positive proof of penetration, is without merit.

Section 4244, Gen. Stat. reads : "Proof of actual penetration into the body is sufficient to sustain an indictment for rape." Under this statute we shall hold the slightest proof of the commission of the offense will justify the judge in submitting the question of fact to the jury, and no form of words are necessary to prove the commission of the crime. The proof, therefore, can be inferred from circumstances, apart from the statements of the party injured. The prosecuting witness testified as to the position occupied by the defendant at the time of the commission of the offense, and it was such as to satisfy the minds of the jurors that the crime of rape had been committed, and the physician by whom she was examined found injuries upon her person which such an act might have occasioned. (*Brauer* v. *State*, 25 Wis. 415; *People* v. *Crowley*, 102 N. Y. 237; *Taylor* v. *State*, 111 Ind. 280; *State* v. *Tarr*, 28 Iowa 397; Bishop Stat. Crimes, Sec. 488.)

If the doctrines contended for by counsel for appellant should prevail, then the scoundrel who attempted the chastity

of a child or a young girl would escape punishment merely because of her youth, preventing his fully consummating the crime, which appears to us, as undesirable as it would be unjust.

In this case the circumstances prove the commission of the offense beyond a doubt; the intent of the accused is fully proved by his acts; the jury so found. Judgment affirmed.

BIGELOW, J., dissenting.

I am unable to agree with my learned associates in the conclusion reached by them in this case.

If we are at liberty to consider the sufficiency of the evidence given upon the trial, it seems open to grave question as to whether the defendant was proven guilty, beyond reasonable doubt, of the crime of which he has been convicted. It seems to me that the evidence, as reported, preponderates so greatly against the verdict, that it must have been the result of passion or prejudice.

The defendant was charged with a most heinous offense; one that would naturally arouse the indignant feelings of a community to such an extent as to render it quite probable that they were communicated to the jury, and secured a conviction upon evidence that would have been entirely insufficient in other cases. Lord Hale's remark, that such an accusation is one easily made, hard to prove, and still harder to be defended by one ever so innocent, has been often repeated, and acted upon, since, by courts all over the land. Iowa has found it necessary to enact a law, forbidding a conviction for the crime of rape upon the testimoney of the prosecutrix alone. (*State* v. *McLaughlin*, 44 Iowa 82.) In *Gazley* v. *State*, 17 Tex. App. 267, a conviction upon testimony strikingly like that given in this case, was reversed as against the evidence. The opinion also shows how little reliance should be placed upon medical testimony, such as was given in the case at bar. Other courts have often set aside verdicts in rape cases upon similar grounds. (*People* v. *Benson*, 6 Cal. 22; *People* v. *Hamilton*, 46 Cal. 540; *People* v. *Brown*, 47 Id. 447; *People* v. *Ardaga*, 51 Id. 371; *People* v. *Hulse*, 3 Hill 309; *Mathews* v. *State*, 19 Neb. 330; *State* v. *Spidle*, 22 Pac. Rep. 620; *State* v. *Burgdorf*, 53 Mo. 65, and numerous others.)

Judging from the evidence, the child's associations had not

been such as were likely to leave her mind as innocent of all knowledge of such things as we generally expect children of her age to be. She testifies that the assault was committed in her mother's home, on Thursday, the 20th day of June, 1889; and that before they had time to adjust their clothing, the mother returned and was let in by the girl. There seems to have been nothing, however, to arouse the mother's suspicions of anything wrong, and she had none. The prosecutrix made no complaint, and showed no signs of injury, until two days thereafter, when she complained of being chafed, which was attended to by the mother. The next day she complained more, and walked in a peculiar manner, but did not know what was the matter with her, and made no complaint of ill-usage. Ten days thereafter a physician was called, who determined that she was suffering with the gonorrhea. Some time after this she charged this offense upon the defendant, who was her mother's brother. No attempt, however, was made to prosecute him, until August 4th, when her stepfather swore to a complaint in the justice court, and he was arrested. Upon the preliminary examination her testimony was taken briefly, in answer to the most leading questions by the district attorney. The defendant was unrepresented by counsel, and there was no cross-examination; nor was any attempt made by any one to ascertain her competency as a witness, within Gen. Stat. Sec. 3402. The only evidence tending to corroborate her in the slightest degree was that of the physician, who testified that he found the vagina unnaturally distended, and was of the opinion that she had the gonorrhea; that this distension might happen from other causes than sexual connection; and that he made no microscopic examination to determine whether she had the disease mentioned.

The defendant's counsel contends that this, at most, shows only an attempt to commit rape, and I feel justified in saying that this contention is fully borne out by the evidence. The girl does not testify to anything more than an attempt, and the circumstances are conclusive that this attempt, if made, was not successful. That a full-grown man could succeed in penetrating the body of a child of that age, and there be no cries or tears, no complaints, and no signs of distress, is, it seems to me, contrary to both reason and experience. It is incredible that she would not cry out from the pain that would inevitably be

inflicted by such violence, and exhibit some signs of suffering that could not be concealed.

The medical authorities agree that in such a case there would be great laceration, a flow of blood, and much pain and suffering produced upon the victim. (3 Whart. & S. Med. Jur. Secs. 219, 220.) The evidence in *Burk* v. *State,* 8 Tex. App. 336, shows what could be expected in such a case. "A full and complete connection between an adult male and a child under twelve years of age is, on the first attempt, manifestly impossible," (3 Whart. & S. Med. Jur. Sec. 218,) and it must be still more impossible with a child only seven.

The testimony of the physician concerning the child's diseased condition, while doubtless going very far with the jury, was really entitled to but very little weight, for the reasons: (1) It was not shown that the defendant had the gonorrhea—a most important consideration. (2) The disease might have been communicated to her by some other person, or in some other manner than by sexual intercourse. (3 Whart. & S. Med. Jur. Sec. 222.) (3) Other diseases could easily be mistaken for gonorrhea. Upon this last point, in section 223 of the last quoted authors, it is said: "Leucorrhœa and gangrenous inflammation of the vulva are diseases which often arise spontaneously in young children, especially of the poorer class, and are due to bad diet, uncleanliness, scrofulous taint, and epidemic influences. In the minds of anxious relatives they may awaken suspicions of violence with intent to commit rape, and sometimes form the occasion for criminal prosecutions against innocent persons, for the sake of gain. Leucorrhœa may be easily mistaken for gonorrhea, for the discharge in the two diseases is nearly similar, and the local symptoms are so much alike as to render a positive opinion in legal cases, rather hazardous." And again (section 227): "Within the last few weeks a child of nine years of age was brought to me, upon whom it was suspected that violence had been inflicted. A careful examination afforded evidence that the case was simply one of vaginitis. There was complete absence of any indication of violence, for, although it can scarcely be believed to be possible that sexual entrance into the vagina of an infant, could, under any circumstances, be perpetrated, yet in the attempt much contusion of the young and delicate soft parts *must have ensued,* had it been made." Many instances of this kind are given in the boo s,

where the parents' erroneous suspicions have even been confirmed by the hasty and ill-considered opinions of physicians, given without making a proper examination. Cases are by no means rare, where the necessity of accounting for the contraction of what was supposed to be venereal disease, has, under the persistent questioning and threats of anxious relatives, led the child into accusing some wholly innocent person of tampering with her. (3 Whart. & S. Med. Jur. Sec. 229.)

Quite possibly this was the case here. It was only after the physician was called, and he had pronounced the disease gonorrhea, that the accusation was made against the defendant, and, apparently, not for some days after this. The necessity then existed of accusing some one, and it is quite evident that had it not been for this necessity, the assault, if it was really made, would never have been made known by the child. The admission of the stepfather's affidavit made in the justice court, showing that he believed the defendant guilty, was very prejudicial to his case, although its admission, as against the objections urged, was probably not error. The same may be said of the evidence concerning the particulars of the assault, as related by Bertha to her mother, when she finally accused the defendant of the offense. Such statements were mere hearsay, and their admission was considered sufficient to call for the reversal of a conviction for the same kind of an offense in *State* v. *Campbell*, 20 Nev. 122, and doubtless would have worked the same result here, had the testimony been particularly objected to. But, although it was not, and consequently its admission was not error, it was equally as prejudicial to him as though it had been admitted against his most strenuous opposition, and probably goes far towards accounting for the verdict. For these reasons I think the conviction should be set aside as contrary to the evidence.

I agree that under the great weight of authority construing statutes similar to our own, the depositions taken upon the preliminary examination were sufficiently proven to admit them as evidence in the case. The authentication required by Gen. Stat. Sec. 4036, seems to be the signing by the witness and testing by the magistrate, as previously provided for in the section, and which had been done here. For the same reason, the oral testimony showing that the witnesses were examined in the presence of the defendant, etc., was properly admitted.

Dr. Hanson's testimony should not have been received.

Section 4576, Gen. Stat., makes the rules for determining the competency of witnesses in civil cases applicable to criminal cases. Section 3406 provides: " A licensed physician or surgeon shall not, without the consent of his patient, be examined as a witness as to any information acquired in attending the patient, which was necessary to enable him to prescribe or act for the patient." The information concerning which he must not be examined, includes not only knowledge received from the lips of the patient, but also from the statements of others who surround him at the time, or from observation of his appearance or condition. (*Grattan* v. *Metropolitan Co.*, 80 N. Y. 297.)

The intent of the statute in making such information privileged, " was to enable a patient to make known his condition to his physician without the danger of any disclosure by him, which would annoy the feelings, damage the character, or impair the standing of the patient while living or disgrace his memory when dead." (*Pierson* v. *People*, 79 N. Y. 434 )

But notwithstanding the quotations made by my associates from the opinions in *Pierson* v. *People, supra,* in which it was held that the New York statute, of which ours is a substantial copy, did not apply to a case of murder by poisoning, and that consequently the physician's testimony was admissible, I do not understand them to hold that the statute is not applicable here, but that the ruling in admitting the testimony is sustained upon the ground that such "consent" to the physician's testifying had been given, as made it competent.

The statute reads that the physician " shall not without the consent of his patient, be examined as a witness," etc.

There is no pretense here that the " patient" had given this consent, but its admissibility is placed upon the ground that the patient's parents, stepfather and mother, have given implied consent to his testifying, and this, of course, must necessarily assume that the parents have the power to give the required consent, and to waive, for their children, the protection of the statute.

But that they do not have this power seems to me reasonably clear from both the letter and spirit of the statute. It does not say that the physician's testimony shall not be admitted without the consent of the patient, or his parents or guardian, or executor or administrator, but the patient alone is mentioned.

If it be objected that under such construction his. testimony would always be lost where the patient was too young to give consent or was insane or dead, it may be replied that this is just what the statute was intended to do. It intended to place the information so obtained upon the same footing as communications between husband and wife, communications to an attorney, or confessions to a clergyman or priest. Such evidence is always to be incompetent, except in the single instance of where the party in whose interest it is excluded, is able to, and does, give his free consent to its divulgence.

In *Westover* v. *Insurance Co.*, 99 N. Y. 56, the action was brought upon a life insurance policy issued to the plaintiff's testator. Upon the trial the plaintiff called a physician who had attended the deceased during his life-time, and asked him certain questions concerning the condition in which he had found him. To this the defendant, the insurance company, objected that the evidence was incompetent and privileged under the statute. This of course, raised the question whether, the patient being dead, his executor could give the consent necessary to authorize its admission, and it was held he could not. In the course of the opinion the court says: "There does not seem to be left any room for construction. The sections are absolute and unqualified. These provisions of law are founded upon public policy, and in all cases where they apply, the seal of the law must remain until it is removed by the person confessing, or the patient or client. * * * Whenever the evidence comes within the purview of the statutes, it is absolutely prohibited, and may be objected to by any one unless it be waived by the person for whose benefit and protection the statutes were enacted."

Nor do I understand that it has been conceded by any one that the mother could have given the consent required by the statute. Certainly, to my mind, it has not been done by the defendant or his counsel.

But admitting that the parents could give the required consent, the next question is, whether they have done so.

That there may be implied, as well as express, consent, there can be no doubt, but the evidence of this implied consent or waiver, must be distinct and unequivocal. (1 Whart. Ev. Sec. 584; *Hageman Priv.* Com. Sec. 151; *Westover* v. *Insurance Co.*, 99 N. Y. 59.)

It is supposed that the evidence shows a determination by the parents of the child to prosecute the defendant, and that consequently they intended to waive the protection of the statute for the child. Admit the premises, and the conclusion does not by any means follow. There is no logical connection between them. If this is to be the rule, then in a case where it is supposed the evidence shows that the party to make the waiver does not desire the defendant prosecuted, then it must be presumed that he has not consented. Before we can even speculate upon such a state of facts, we must know how strong the desire for the defendant's conviction or acquittal is, how much or how little they cared for the physician's knowledge being made public, and all the other considerations that might influence them. It is sufficient to say that this would be no rule at all for the admission or rejection of evidence, and is entirely inadmissible. Nor does the fact that the mother appeared and testified upon the preliminary examination to the daughter's ailments constitute any such waiver, or consent. She appeared the same as other witnesses presumably in obedience to a subpœna—and it was not a matter of choice with her whether she would testify or not. If asked the questions, she must answer. It seems like going a good ways to hold that because she was compelled to testify, therefore her testimony constitutes implied· consent to the physician making public the information obtained by him. Nothing ought to constitute implied consent that is not voluntary. But again, the testimony of the mother did not make public the information of the physician. She did not pretend to know what was the matter with the child, and the symptoms she described might have come from a dozen other sources than venereal disease. She supposed for some time that she was simply chafed. To my mind, even the assumption that, at the time of the trial in the district court, when the physician's testimony was admitted, either the child or her parents wished to prosecute the defendant, is not supported by the evidence. It is founded upon the circumstances of the stepfather having made the complaint in the justice's court, and that the mother and the child had appeared and testified upon the hearing. · Weak as this foundation is, it is further weakened by the uncontradicted evidence of two witnesses that before the trial they had taken back much they had said against the defendant in the depo-

sitions, declared they had only so testified because of the threats and promises of Joseph Alexander, the stepfather, and that they would never testify against him again. That this was their feeling towards him, is further borne out by the fact that neither of them was present at the trial. If the stepfather ever had any right to consent for the girl, it was certainly lost when her own father appeared and took possession and control of her, as he had already done. But in my judgment the whole theory of implying consent from any such premises is wrong. While it may be implied as well as expressed, the implication should be based upon substantial, clear and unequivocal grounds, such as do not exist here. (See *People* v. *Murphy*, 101 N. Y. 126; *People* v. *Stout*, 3 Park. Crim. R. 670.)

If the evidence of physicians ought to be received in rape cases or in criminal cases, the remedy is with the legislature. As said in *Renihan* v. *Dennin*, 103 N. Y. 580: "It is probably true that the statute as we feel obliged to construe it, will work considerable mischief. In testamentary cases, where the contest relates to the competency of the testator, it will exclude the evidence of physicians, which is generally the most important and decisive. * * * But the remedy is with the legislature, and not with the courts."

But the truth is, there is just as much reason for excluding such evidence in criminal cases as in any other. The inevitable result of the statute is to exclude evidence that would often be of the highest importance, but as a matter of public policy it is considered better that such testimony should be lost, than that the confidence which ought to exist between priest and and penitent, lawyer and client, and physician and patient, should be destroyed by the knowledge that they may be compelled to divulge the information so obtained from those who have placed trust in them.

The minutes of the court show that after the jury was impaneled and sworn, the defendant's plea of not guilty was entered, and they do not show that he had ever pleaded prior to that time; but, believing that the conviction should be reversed for the foregoing reasons, I have not considered this point, nor the one concerning the verdict.