## DENNIS D. BRYANT v. STATE.

No. A-9312. Dec. 17, 1937.

(74 P. 2d 624.)

Elmore Pinnick and M. Bristow, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and Lewis R. Morris, Co. Atty., for the State.

BAREFOOT, J. The defendant was tried and convicted in the district court of Oklahoma county for the crime of robbery with firearms, and sentenced to serve a term of 25 years in the penitentiary, and has appealed.

It is the contention of defendant that the evidence was not sufficient to warrant a conviction, that the county attorney was permitted to ask leading and suggestive questions, and that the defendant did not have a fair and impartial trial. All of these objections may be considered together.

The information and evidence on behalf of the state reveals that the defendant was charged jointly with two other parties with the crime of robbery with firearms, in Oklahoma City, Okla., on the 11th day of October, 1936.

A witness whose name was Leon McDonald testified that he was employed as a driver by the Oklahoma City Cab Company; that about 12:30 a. m., Sunday, October 11th, while driving north on Western avenue in Oklahoma City, he was stopped by three parties, one of them got into

his cab and had his hand in his pocket, and ordered him to wait until the other two returned. The other two parties went east toward 1008 West Sixth street, which was the scene of the robbery. In a very short time they returned, each one carrying in his hand a brown sack, wrapped in paper. One of these parties got in the back seat of his car, and the other in the front seat with him. The defendant was positively identified as being the party who got in the front seat, and he had a gun in his hand, and he told the witness to drive on or "he would shoot his head off." He afterwards directed the witness to go to 1006 West California street, and before getting there commanded him to drive down to Shartel, then south, then to Reno, and east to Lee, and down Lee to Noble, and east on Noble. The three parties got out of the car on Noble just west of Harvey. The gun carried by defendant was a six-shooter, .41 or .45 caliber. Defendant remarked "that he should have shot some fellow," and once, when witness stopped at a stop line, defendant held the gun on him, and said, "Drive on, or I will shoot your damned head off." The defendant had with him a sack which the witness identified as bottles. The witness also described the clothes worn by defendant, and they compared favorably with the description given by other witnesses. The witness could identify defendant by having his lights on him as he came across the street and also by the lights from his car.

Lydia Hickman testified that she and her husband, A. P. Hickman, were living at 1008 West Sixth street, Apartment 4; the apartment house being rented by them and the apartments therein being subrented by other tenants. At the time of the robbery, which occurred between 12:30 and 1 a. m., the witness, her husband, Mrs. Leo Smith, and Mrs. Woody, were in the apartment when

defendant and another man entered the apartment, and with the aid of a gun held by defendant and a knife in the hands of the other man, held up and robbed the occupants of the apartment, taking from A. P. Hickman about $70 in money and checks, and also carried away some bottles of whiskey which were wrapped in paper like that exhibited by the state, and a string like that offered in evidence by the state. The robbers were in the apartment about 15 minutes. They wore no masks. Witness further identified a picture of Foster, one of the parties named in the information with the defendant, as that of the second of the robbers.

The witness A. P. Hickman testified to the same effect. He positively identified the defendant. He described the gun as an old model gun being a .41 or .45 caliber Colt's, which description corresponds to the testimony given by the witness McDonald. He also testified that when the parties first entered the apartment and announced that "it was a stick-up" that he resisted and attempted to grab the gun from one of the parties, and that the other stabbed him in the back with a knife.

The witnesses Mrs. Leo Smith and Mrs. Woody testified to the same material facts, and positively identified the defendant as one of the robbers. Mrs. Woody testified that she was cut on the hand by one of the robbers while they were lining them up against the wall.

D. F. Brown, a police officer, made an investigation of the robbery. He went down to 1006 West California, the address given by McDonald as that to which the defendant had first directed him to drive; he watched the house. A man came out and the officers followed him. He broke a bottle of White Castle whisky. A part of the whisky taken from the apartment was White Castle. Wit-

ness then went to 220 West Noble and to a room which had been occupied by Jack Foster, this being the same Foster charged with the defendant, and a picture of him had been identified as that of one of the robbers. Witness reached this room about 11 o'clock the morning after the robbery and found the defendant sleeping in the room. The officer was shown the paper previously exhibited to the witness Lydia Hickman and identified the same as paper he found lying in the room where defendant was apprehended. He also identified the string previously exhibited to Lydia Hickman as that which he found on the floor near the foot of the bed occupied by defendant. On cross-examination the witness testified that when he went to 1006 West California he was looking for Jack Foster and another man known as Jack (the name used by defendant). The witness learned Jack Foster's address of 220 West Noble from the man who broke the bottle of whisky.

Two other police officers testified to seeing the defendant, Jack Foster, and Chet Stone together about 9 or 10'clock on the evening preceding the robbery. The officers followed them into an alley, and on the approach of the officers one of them threw down and broke a bottle of whisky.

The defense of the defendant was what is known in law as an alibi. He testified that he went to a domino parlor of one Loring Miller a few minutes before 12 o'clock. This domino parlor was located some 20 blocks from the scene of the robbery, and that about 12:30 o'clock his brother, who drove a cab for the Y & Y Cab Company, came by and picked him and certain other parties up and took them to a dance hall several miles south and west of Oklahoma City, where they remained until about 3:30 a. m., when the brother returned and brought them back to

the city. He then went to see a cousin and returned about 6 o'clock to where he was working, and, upon finding that some one had taken his place, he testified that he then went to the room of Jack Foster and went to bed, where he was found by the officers. He was corroborated by his brother and Loring Miller and other witnesses who claimed to have seen him at the domino parlor between 12 and 1 o'clock. Some of the witnesses whom he claimed went to the dance hall with him were not called as witnesses. There were some minor discrepancies in the testimony of the witnesses of the defendant. On cross-examination, the defendant testified he had been convicted on two previous occasions for robbery with firearms and larceny of an automobile; the sentences running concurrently and being served in the penitentiary at McAlester. He there got acquainted with the two parties who were charged jointly with him in this case. On cross-examination, his brother, Robert Lee Bryant, testified that he had pleaded guilty to the crime of larceny of an automobile, and received a suspended sentence.

The jury heard all this testimony, saw the witnesses on the stand, observed their demeanor. It was for them to say whom they would believe or disbelieve. If there is a fair conflict in the evidence, or it is such that different inferences can be properly drawn from it, the determination of the jury will not be interfered with, unless it is clearly against the weight of evidence, or appears to have been influenced by passion or prejudice. They were in a better position to pass upon the truth of witnesses' statements than is an appellate court. They found the defendant guilty and assessed the punshment. Under the law and facts their verdict should not be set aside. Ingram v. State, 3 Okla. Cr. 634, 108 Pac. 552; Powell v. State, 11 Okla. Cr. 615, 150 Pac. 92; Queen v. State, 35 Okla. Cr. 412, 250 Pac. 935.

Defendant complains of the charge of the court in reference to the credibility of witnesses. No exception was taken to the charge, nor were any special instructions requested. We have examined this charge and we find no error therein. There is no merit in the contention that the county attorney was permitted to ask leading and suggestive questions. No exceptions were taken to any questions asked by the county attorney.

The judgment of the district court of Oklahoma county is therefore affirmed.

DAVENPORT, P. J., and DOYLE, J., concur.