## LEE LOOPER v. STATE.

No. A-6484. Opinion Filed April 13, 1929.
(276 Pac. 503.)

342

Allen & Allen, for plaintiff in error.

Edwin Dabney, Atty. Gen., and J. H. Lawson, Asst. Atty. Gen., for the State.

CHAPPELL, J. The plaintiff in error, hereinafter called defendant, was convicted in the district court of Mc-

Curtain county on a charge of murder, and was sentenced to imprisonment in the state penitentiary for the term of his natural life. The information properly charges the defendant with the crime of murder.

The undisputed facts in the case appear to be: That the defendant and the deceased were living together in the same house at the time of the homicide, and that the deceased was the stepfather of the defendant, the defendant having married the daughter of a former marriage of the wife of deceased. That on the morning of April 12th a difficulty arose between the defendant and the deceased. The defendant had been engaged by the deceased to assist him in making a crop, and some time prior to the death of the deceased a misunderstanding had arisen, and the defendant had been making some arrangements to move away from the home of the deceased. That this misunderstanding culminated on the morning of the homicide in the deceased taking over the interest of the defendant in the crop. That, after the difficulty on the morning of the homicide, the deceased went to the field where he was listing land, and that deceased continued to work at this job until the time he was shot. That the defendant left the place shortly after the misunderstanding and returned about 1 o'clock and spent the afternoon in the house and about the place. That a person who was claimed to be the defendant concealed himself under a bank near the edge of the field where the deceased was listing land, and, when the deceased had turned at the end of the row, which brought deceased nearest the person concealed, a shot was fired, and deceased received a wound in the back of the head and neck which later proved fatal. That this homicide occurred at about dusk in the afternoon. The team of deceased was seen coming from the field by the wife of deceased and this defendant and some neighbors who had come to the place. A search for the deceased led to the discovery of him lying near his plow, fatally wounded from No. 4 shot fired from

a shotgun. That the deceased was unconscious when found. While deceased was being carried from the place where he was shot to the house, he said, "That's a dirty deal to kill a man over a team." After deceased was carried into the house, the doctor shook him to rouse him, and asked him, "Who shot you, old man?" He answered, "Lee Looper." The doctor, not understanding what he said, asked him again who shot him; he said, "Lee Looper." Deceased became unconscious shortly after this and never again spoke an intelligible word. An investigation by the sheriff's office led to the arrest of the defendant, his trial, and conviction for the crime.

When the case was reached for trial, the defendant requested the court to permit him to withdraw his plea of not guilty and permit him to file a motion to quash and set aside the information. This request was denied by the court, and is now assigned by defendant as error.

In the first assignment of error the defendant complains that the indorsement on the complaint filed with the justice of the peace was not sufficient, and that the district court did not acquire jurisdiction of the case for that reason. The justice of the peace before whom the preliminary hearing was had, filed a transcript of the proceedings, duly certified, with the clerk of the district court of McCurtain county. The part of the transcript material to this case reads as follows:

"On this 21st day of April, 1926, comes on this case for trial, the State being represented by Tom Finney, County Attorney, and the defendant being present in his own person, and by his Attorney, Douglas Allen, both sides announce ready for trial. Defendant waived arraignment, and entered his plea of not guilty. Hearing the testimony of witnesses, it is believed by the court that the crime of murder has been committed, and that L. O. Looper is guilty thereof. It is, therefore, ordered, adjudged and decreed by the court, that defendant, Lee Looper, be held to await the action of the District Court, and that he be committed

to the jail of McCurtain County until released by the proper court."

In the case of Tucker v. State, 9 Okla. Cr. 590, 132 P. 826, this court in the body of the opinion says:

"The failure of the committing magistrate to indorse his findings and order in the first instance on the preliminary complaint is not jurisdictional, and where the proper order has been made and entered, and is shown by the transcript transmitted to the superior court, that in itself is sufficient to show jurisdiction."

In the case of Williams v. State, 6 Okla. Cr. 373, 118 P. 1006, this court said:

"It is the fact that there was a preliminary examination, or a waiver thereof, and a judicial determination thereon by the examinating magistrate that a felony has been committed, and that there is probable cause to believe that defendant is guilty thereof, that confers jurisdiction on the district court and authorizes the county attorney to file an information in said court charging the crime committed according to the facts in evidence on such examination; or for the offense charged in the preliminary information when such examination has been waived by the defendant."

In the case of Tegeler v. State, 9 Okla. Cr. 138, 130 P. 1164, paragraph 1e, of the syllabus, this court held:

"It is discretionary with the court to permit the withdrawal of a plea of not guilty for the purpose of allowing a defendant to file a motion to set aside an indictment, and such action will not be reviewed upon appeal, unless an abuse of this discretion is shown."

It appearing that the transcript of the justice of the peace was sufficient to confer jurisdiction, the defendant having had from the 24th day of April to the 12th day of August in which to file his motion to quash the information, there was no abuse of discretion by the court in overruling the request.

The defendant next urges that the court erred in ad-

mitting certain statements made by deceased to the doctor, as dying declarations. Dr. McBrayer, the physician who attended the deceased immediately after the shooting, testified:

"Q. Where did you find Mr. Lung when you got there? A. I found him in the field about a quarter of a mile from the house.

"Q. What was the nature of his injury? A. I found that he had been shot in the back of the head and back of the shoulder with a shot gun.

"Q. Was he afterwards moved to the house? A. Yes, sir, right away after I saw him.

"Q. Did you say he was shot in the back of the head? A. And back of the shoulder—head, neck and shoulder.

"Q. What was his condition with reference to being serious or otherwise? A. It was serious.

"Q. Did he at that time have any chance to live? A. No, sir.

"By the Court: Doctor, what conversation did you have with this man? A. I took him by the shoulder after we carried him to the house; I said "Old man who shot you?" and he said, "Lee Looper." I didn't understand him and I said "What did you say?" and he said, "Lee Looper"; I turned and asked them who Lee Looper was and they said his son-in-law.

"Q. Did you have any other conversation after that? A. That was about the only plain thing he answered; he answered a few questions but was semi-conscious; he didn't talk much, possibly a few more words but not to me.

"Q. He was in a stupor or semi-conscious? A. Yes sir, he was in a semi-conscious condition when he did it. They do answer questions sometimes when you holler quick and that is the way I did.

"Q. Were you there when he died? A. No. he was living the next morning, he possibly died the next night.

"Q. What was his condition then? A. Still worse, entirely unconscious; I saw he wouldn't live but a few

hours; the next time I saw him he was dead. I saw him three times."

The rule for the admission of dying declarations is that the deceased must make the declaration when all hope of recovery has been abandoned and under the conviction that death is inevitable and near at hand. This court has repeatedly held that the manner of proving and the proof necessary to establish the statement of the deceased person as a dying declaration may differ in different cases, depending largely upon the condition of the party making the declaration at the time he made it.

In the case of Poling v. State, 12 Okla. Cr. 27, 151 P. 895, Ann. Cas. 1918E, 663, this court held:

"Dying declarations may be made by signs as well as by words, and where the declarant is in a dying condition, and so injured as to be unable to speak, the fact that in response to questions her answers were indicated by nodding and shaking her head, and pointing her finger, forms no objection to the competency and admissibility of such declarations."

In Smith v. State, 5 Okla. Cr. 282, 114 P. 350, this court said:

"Where it is shown by the testimony that immediately after being shot the deceased exclaimed, 'Ed Smith has killed me,' and where the deceased subsequently said to the physician who attended him, 'I am all in,' and never at any time after receiving the fatal wound expressed any hope or expectation of recovery, this, in connection with the fatal character of the wound received, justified the trial court in receiving the statements made by the deceased as dying declarations."

In Blair v. State, 4 Okla. Cr. 360, 111 P. 1004, this court said:

"In response to the question, 'Did you see who shot you?' the deceased in his dying declaration answered, 'Joe Blair, from ambush, two shots.' Held, that the answer

on its face was a statement of fact and not a mere opinion, and was admissible."

The answers of the deceased in this case to his doctor were properly admitted as dying declarations. We are of the opinion that they were further admissible as part of the res gestæ.

In the case of Morehead v. State, 12 Okla. Cr. 62, 151 P. 1183, Ann. Cas. 1918C, 416, paragraph 6 of the syllabus, this court held as follows:

"On a trial for murder, declarations of the deceased made under such circumstances as will raise the reasonable presumption that they are the spontaneous utterances of thought created by or springing out of the homicidal act, and made so soon thereafter as to exclude the presumption that they are the result of premeditation and design, and without knowledge of which the principal fact might not be properly understood, are admissible as part of the res gestæ."

In the body of the opinion, page 79 of 12 Okla. Cr. (151 P. 1189), this court said: "We are inclined to think that the declarations of the deceased made between the time the fatal shot was fired and the taking of his statement in writing by the witness Jones, were competent and admissible as a part of the res gestæ. No fixed measure of time or distance from the main occurrence can be established as a rule to determine what shall be a part of the res gestæ. Each case must necessarily depend on its own circumstances to determine whether the facts offered were really part of the same continuous transaction."

In the case of Missouri, Kansas & Texas Railway Co. of Texas v. Moore, 24 Tex. Civ. App. 489, 59 S. W. 282, the Court of Civil Appeals of Texas held, in substance, that, where the deceased had been unconscious from the time of the injury up to the time the statement was made, the statement was part of the res gestæ. The syllabus, paragraph 1, is as follows:

"Declarations by one injured as to what caused the accident, though made several hours thereafter, are admissible as part of the res gestæ, the injury being such as to occasion immediate unconsciousness, he having been unconscious when found, a few minutes after the accident, and having of his own accord made the statement immediately on regaining consciousness."

Under the facts disclosed in this case, the statements made by the deceased were part of the res gestæ and properly admissible as evidence against the defendant. The trial court therefore committed no error in the admission of deceased's statements.

Defendant next complains that the court erred in instructing the jury with respect to the declarations of the deceased. The instruction is as follows:

"There has been admitted in evidence before you a statement of Arthur Lung, purported to have been made by Arthur Lung, to the witness, Dr. McBrayer. You are instructed that before you can consider the statement of said Arthur Lung, if you believe that he made a statement to the witness McBrayer prior to his death, that you must believe and find from the evidence beyond a reasonable doubt that the said Arthur Lung believed or realized, prior to the time he made the statement, that he was in such a serious condition on account of the wounds afflicted on his body that he would not recover or that he would die from the effects of said wounds."

In the case of Willoughby v. Territory, 16 Okla. par. 3, p. 577, 86 P. 56, 8 Ann. Cas. 537, the court held:

"Where in the trial of a criminal case, the court as a matter of law passes upon the competency of dying declarations and finds that they are competent to be submitted to the jury, and they are submitted to the jury, it is not error for the court by an instruction, to again submit the question of the competency of such declarations to the jury for their consideration."

As the court, after hearing the preliminary testimony and argument of counsel, had decided that the evidence was

sufficient to admit the statements of deceased as dying declarations, it was not error for the court to submit the question of the competency of such declarations to the jury for their consideration.

The defendant complains of other errors, but they are without merit. No complaint is made as to the sufficiency of the evidence, and an examination of the record discloses that the evidence is amply sufficient to support the verdict of the jury. No substantial errors of law appearing upon the record sufficient to warrant a reversal, the cause is affirmed.

EDWARDS, P. J., and DAVENPORT, J., concur.