WILEY PINKEY ATKINSON v. STATE.

No. A-10859.   June 23, 1948.

(196 P. 2d 522.)

Owen F. Renegar, of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

JONES, J.   The defendant, Wiley Pinkey Atkinson, was charged by information filed in the district court of Oklahoma county with the crime of robbery with firearms, was tried, convicted and sentenced to serve 20 years in the State Penitentiary, and has appealed.

The first proposition presented in the brief of the defendant is that the evidence is insufficient to sustain the conviction.

It was alleged in the information that the defendant committed the crime of robbery with firearms on March 31, 1946, by taking $95 from Angie Coulter while she was acting as night clerk at the Sieber Hotel in Oklahoma City.

Angie Coulter testified that on March 31, 1946, she was employed as relief clerk at the Sieber Hotel; that she went on duty at 11 p. m.; that about 2:30 a. m. she heard footsteps coming down the lobby and looked up; that the defendant was standing there pointing a pistol at her and said, "Lady I guess you know what this means, hand it over"; that she gave the defendant some paper money out of a box and that he commanded her to give him the rest of it; that she kept handing it to him a little at a time; that while the robbery was going on, Earl Bennett, the hotel porter, walked into the lobby and the defendant pointed a gun at him and commanded him to sit down; that the defendant then pointed the gun back at her and told her to get the money out of the safe; that about that time the elevator made a noise as if it was coming down and the defendant turned and walked out of the door; that she delivered to the defendant approximately $95 of money which belonged to the hotel; that the next morning after the robbery she resigned her job and moved back to her home at Guthrie, where she was residing at the time of the trial.

Earl Bennett testified that he was the Negro porter at the Sieber Hotel the night of March 31, 1946; that about 2:30 a. m. he came out of an anteroom into the lobby of the hotel and saw a man in front of the desk putting some money in his pocket; that the man turned and pointed the gun at him and commanded him to put his hands in the air and then directed him to sit down; that the robber kept bending over the desk and brandishing the pistol at Miss Coulter and telling her he knew there was more money, for her to give him the money, that he asked about the safe; that the elevator started coming down from upstairs and the robber became nervous and walked outside; that about five months later, when

the defendant was arrested, he was called to the police station and picked the defendant out of several suspects which they had in a show-up room as the person who had committed the robbery. He was positive in his identification of the defendant.

Wayne Harbolt, police officer of Oklahoma City, testified that the next day after the arrest of defendant on September 18, 1946, he talked to the defendant concerning the Sieber Hotel robbery; that the conversation took place in the consultation room at the Oklahoma City police station in the presence of Wenona Nation, a stenographer in the police department; that the defendant said that he wanted to get it off his chest and enter a plea of guilty, and that no threats or duress, nor promises of inducement were made to the defendant to secure a statement from him. A written statement which was signed by the defendant was admitted in evidence. In it the defendant made the following statement:

"Along about March 1st, 1946, I started to work for Eugene Elmer *Hames* alias Mutt *Hames,* delivering whisky. I did not work very long until my car broke down and as I did not have the money to have it fixed Mutt told me to put it in the garage and he would pay for it which he did, the bill amounting to approximately $80. I paid him all with the exception of $40 or $45.

"He started asking me for this money, and on March 30th, 1946, I was at his house at 628 N. W. 3rd street and he dunned me, at which time we started talking about some place that I could rob to get the money to pay him. I mentioned the Sieber Hotel and he said that it should be good for $300 or $400. We talked for some time and he loaned me his 38 pistol and along about 1 a. m. I got in my car and drove it to 12th and North Harvey where I parked it, walked to across the street from the Sieber Hotel where I stood and watched for awhile to

see if there was anyone in there. I could only see the porter and the woman behind the desk.

"I walked in and pointed the pistol at them and told the porter to sit down in a chair and told the lady behind the desk to give me all the money in the drawer. She put all the money that was in the drawer on the counter which consisted of approximately $70. I put the money in my pocket and asked her if she had a safe and she said she didn't have and about this time someone walked out of the back and I turned and walked out the front door.

"I then went to my car and drove to a friend's house on 7th street where I stayed all night. The next day I went back to Mutt *Hames* where I paid him the $40 or $45 and gave him his pistol back at which time I told him I had pulled this robbery that we had discussed the night before."

Wenona Nation, stenographer for the police department, testified that she took the statement from the defendant in shorthand and transcribed it; that the defendant read the statement in her presence and signed it; that he did not appear to be nervous or reluctant in any manner when he made the statement.

Clyde Anderson, policeman of Oklahoma City, testified that he arrested defendant on September 17, 1946; that he started to interrogate the defendant that night about the Sieber Hotel robbery and the defendant remarked, "You know I am guilty as hell anyway."

J. F. Yancey, policeman of Oklahoma City, testified that he received the call on his car radio of the Sieber Hotel robbery at 2:50 a. m. on March 31, 1946, and that he went directly to the Sieber Hotel and talked to the clerk and porter about the robbery.

On behalf of the defendant, the evidence was in the nature of an alibi. Mr. and Mrs. Robert Lea testified

that on Saturday evening, March 31, 1946, the defendant and his wife came over to their home for dinner and stayed there at the house and played cards with them until about 2:30 a. m.

The defendant's father testified that defendant and his wife lived with him; that the witness went over to the home of Robert Lea about 1:30 a. m., March 31, 1946, and saw Mr. and Mrs. Lea, and defendant and his wife playing cards; that the defendant and his wife came home and went to bed about ten minutes before 3 a. m.

The defendant testified in his own behalf that he did not commit the robbery as alleged; that he had spent the evening at Robert Lea's home and was there at the time of the alleged robbery; that he left the Lea home shortly before 3 a. m. and went to his own home and went to bed; that he signed the statement admitted in evidence on behalf of the state; but that the reason he signed it was because Officer Harbolt wanted him to implicate Mutt Haymes, a bootlegger, and told him if he would sign the statement implicating Haymes that he would be released.

On cross-examination defendant admitted having been convicted twice of larceny of an automobile and admitted having about 13 other convictions against him for unlawful possession of intoxicating liquor, which charges were filed in the municipal court of Oklahoma City. He denied that he had a pistol in his possession on March 31st, which belonged to Mutt Haymes, but admitted that he had worked for Mutt Haymes.

In rebuttal, Wayne Harbolt denied that he had asked the defendant to make a statement implicating Mutt Haymes in the robbery.

Mutt Haymes testified that his name was Elmer Eugene Haymes; that he had known the defendant about three years; that during the month of March, 1946, he loaned the defendant his blue steel hammerless 38 caliber pistol.

On cross-examination he said that he had loaned the gun to the defendant on three or four different occasions.

Counsel for the defendant state that the evidence is insufficient to sustain the conviction for the reason that the evidence of the defendant presents a perfect alibi.

The defendant was positively identified by the two persons who were present at the robbery. In addition, he signed a written statement confessing that he committed the crime. His explanation of the reason for signing his statement was weak and incredible. His previous bad record affected his credibility. The jury considered all of these things and evidently concluded that the defendant was guilty.

Where the state's evidence is sufficient to show the guilt of the defendant, a defense of alibi and mistaken identity is a question for determination of the jury under proper instructions. Powell v. State, 11 Okla. Cr. 615, 150 P. 92; Teague v. State, 58 Okla. Cr. 239, 52 P. 2d 91.

Under proposition 2, defendant contends that the county attorney committed error in asking defendant on cross-examination concerning certain convictions which the defendant had sustained, including convictions sustained in the police court of Oklahoma City.

The record discloses that there were no objections interposed when the defendant was asked concerning his

former convictions, including the convictions sustained in the municipal court for the unlawful possession of whisky.

It is established law that a defendant may be asked on cross-examination whether he has been convicted of crime for the purpose of affecting his credibility as a witness. Hill v. State, 81 Okla. Cr. 342, 165 P. 2d 146; Graham v. State, 80 Okla. Cr. 159, 157 P. 2d 758.

The right of the county attorney to ask the defendant on cross-examination concerning his former conviction in the municipal court of a whisky conviction has been sustained. Wheatley v. State, 77 Okla. Cr. 122, 139 P. 2d 809. In that case the law is stated:

"County attorney may inquire of defendant on cross-examination, for the purpose of affecting his credibility, as to his convictions in police court for violation of municipal ordinances prohibiting the possession or sale of intoxicating liquors as the same constitute offenses under the state law and are crimes within contemplation of statute. 12 O. S. 1941 § 381."

It is next contended that the court erred in permitting the testimony of Eugene Haymes to be given in rebuttal for the reason that said witness was not endorsed on the information and that his testimony was a part of the proof of the state's case in chief.

The evidence of Haymes was proper rebuttal to refute the testimony of defendant that he did not have the Haymes pistol in his possession on March 31, 1946, and to further refute his statement that he had never borrowed the pistol from Haymes.

In Dobbs v. State, 39 Okla. Cr. 368, 265 P. 661, 663, it is held:

"The state is not required to indorse the names of witnesses whose testimony is made permissible or necessary in rebuttal by reason of the evidence of the defendant."

The judgment and sentence of the district court of Oklahoma County is affirmed.

BAREFOOT, P. J., and BRETT, J., concur.