William Homer CRAIG, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A-12081.

Criminal Court of Appeals of Oklahoma.

Feb. 16, 1955.

Rehearing Denied April 6, 1955.

Luther P. Lane, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

The plaintiff in error, hereinafter referred to as defendant, was charged by information filed in the district court of Tulsa County with the crime of driving an automobile while under the influence of intoxicating liquor, second and subsequent offense, was tried before a jury, but the jury being unable to agree upon the punishment to be assessed left that to the court, who fixed the penalty at a term of eight months confinement in the State Penitentiary.

For reversal, defendant asserts that the evidence is insufficient to sustain the con-

viction, and charges prejudicial conduct on the part of the county attorney in the matter of cross-examination of witnesses other than the defendant.

The first question here, then, is, Was the evidence sufficient to sustain the conviction?

The State used but one witness, Calvin R. Newton, accident investigator for the Tulsa police department. He testified that on the night of March 21, 1953, he was driving north on Peoria Avenue in the City of Tulsa when he noticed the defendant's automobile coming south on Peoria and that it almost struck two cars travelling north. He further testified:

"* * * I turned my patrol car around and followed Mr. Craig and he turned west on Archer. His vehicle moved across the center of Archer a couple of times, then he almost struck a parked vehicle that was parked at the north curb of Archer, about a block west of Peoria, and then I stopped Mr. Craig and put him under arrest."

Witness further testified:

"Q. Mr. Newton, can you describe to the jury the manner in which the defendant, Mr. Craig, was operating his vehicle when you first observed him? A. It was moving from one side of the road to the other.

"Q. Would he go clear from one extreme right to the extreme left? A. He would go from the right side of the road to the left, but not curb to curb.

"Q. Approximately, in blocks, how far did you follow Mr. Craig? A. About three blocks.

"Q. And in what manner did you stop him? Was it by the siren, red light, or how? A. I stopped with red light and the siren.

"Q. Did you attempt to have a conversation with Mr. Craig after you stopped him? A. I did.

"Q. Will you tell the jury what that conversation was, what you said to him, and what he said to you? A.

I asked him for his driver's license and he said he didn't have his driver's license with him. I asked him what was the matter with him, and he told me he was sick. I asked him how much he had had to drink, and he said very little. I asked him if he had ever been arrested for drunk driving before, and he said yes and I took him and put him in the patrol car and took him to the station."

Witness said that defendant's speech was thick and slurring and that he had difficulty understanding him; that defendant was unsteady on his feet when walking from his car to the squad car; that his eyes were blood-shot and the pupils dilated, and that there was the odor of intoxicants about his breath. The officer gave it as his opinion that the defendant was drunk when he was placed under arrest.

The officer further testified that the "Harbor" breath test apparatus was out of working order at the time defendant was incarcerated and for such reason no test was made. He did not remember whether the defendant had requested such a test or not.

On cross-examination the officer stated that defendant after arrest told him that he had been arrested for drunk driving previously and had paid a fine of $100 in 1951 in Judge Edmister's court, and it being night and he being unable to check up on this, that the prisoner was not put in the "drunk tank" but was booked in on "Investigation" to determine the charge to be filed, and that at 8:30 the next morning he radioed the headquarters of the Oklahoma Highway Patrol at Oklahoma City where the records were kept and was advised of four previous convictions of the defendant. A second offense charge was then filed.

It was stipulated that defendant on August 23, 1951, in the court of common pleas of Tulsa County had entered a plea of guilty to a charge of driving while under the influence of intoxicating liquor, and had paid a fine of $100.

This closed the case for the State. Counsel did not demur to the State's evidence.

The defendant's wife, and his father and mother testified in his behalf, and the defendant testified.

The defendant stated that eight days prior to his arrest, while working at the J. E. Fields Cabinet Shop, 619 West First, Tulsa, he fell from a lumber rack and fractured two ribs, and hurt one leg and his right hip; that at the time of his arrest he was wearing a rib-binder and suffering pain and that he had a bad cold and was very hoarse. He said that the night of his arrest he was driving south on Peoria; that he had been to his parents' home; that his father and mother were both ailing and he stayed to administer medicine and did not leave until after 11 P.M. He denied having drunk any liquor but said that on the way home he stopped to drink a cup of coffee and he also drank a bottle of beer. He denied being drunk and denied weaving his car. He claimed that a man was backing a car out into the street and that he swerved to keep from getting hit should the car come into the street; that another time there were two cars passing on Peoria, going north, and that one passed the other, and he pulled over.

Witness denied having been convicted of any offense other than the time he entered a plea of guilty to a charge of drunk driving, but on further cross-examination he admitted that on April 21, 1941, he was charged in Claremore with a traffic offense but denied that it was reckless driving. Said he:

"* * * The highway patrolman stopped me. I was straddle the black line, went to a little J. P. court and they fined me $20. I didn't plead guilty to no reckless driving."

Defendant admitted that on November 16, 1942, he was charged with reckless driving in the court of common pleas of Tulsa County, but he claimed that they reduced the charge to speeding and he paid a fine.

Defendant said that he asked the officers at the jail to give him the drunkometer test, but they did not do so.

Defendant's wife testified that he had not been drinking any whiskey or beer be-

fore he left her at her daughter's home that night. She said that he went from there over to the home of his parents to administer some medicine to his father, who was ill; that her husband had not drunk any intoxicating liquor in the past year or more. She said that she was not aware of the fact that he had been convicted in the year 1951 of drunk driving.

Charley Craig and Mrs. Minnie Craig, the father and mother of defendant, of Tulsa, testified for the defendant, and said that he left their home after 11:00 P.M. the night of his arrest; that they were ill; that the physician had left medicine and their son stayed to administer it; that their son did not drink any whiskey or beer at their home and they did not discover any indications that he had drunk intoxicants before he came to their home.

It was stipulated that the certificate of Dr. R. A. Atchley could be presented in evidence to the jury, and it was to the effect that W. H. Craig had been under the doctor's care for an injury from March 20 to April 17, 1953.

Counsel for the defendant asserts:

"I do not mean to say that a jury cannot convict upon the uncorroborated testimony of a police officer, but I do assert that the guilt must be proven beyond a reasonable doubt. * * * The state did not produce, nor offer an excuse for not producing, the person who was in the police car with Mr. Newton, nor the desk sargeant at the city jail, the traffic sargeant, the city jailers, nor the city doctor, nor did Newton give any scientific test or permit anyone else to do so, although requested. If his acts were sufficient to arouse suspicion, his physical condition and pains could have explained that. He was a sick man. He had two ribs fractured in a fall at the place where he worked. He was, and had been, under the care of the doctor."

If the testimony of the officials in question would have been favorable to the defendant, then it was the duty of counsel to have called them as witnesses in behalf of his client. Presumably, he had determined that the testimony of these persons would not have aided the defendant. And while there was conflict in the testimony of the witnesses on the question of whether the defendant was under the influence of intoxicating liquor at the time of the arrest, this was an issue for the jury to determine from all the evidence in the case.

The proposition for reversal has required a close examination of the evidence, the court's instructions to the jury, and all the surrounding circumstances as revealed by the record. A person charged with crime is entitled to the protection of all fundamental safeguards involving both procedural and substantive law, to the end that he is assured a fair trial.

This court does not weigh the evidence, and has uniformly held that the findings of a jury on a disputed question of fact will not be disturbed where there is competent evidence in the record to sustain such findings. Miller v. State, 92 Okl.Cr. 382, 223 P.2d 557; Sadler v. State, 84 Okl.Cr. 97, 179 P.2d 479.

Often we find much in the evidence in cases to elicit our sympathy for persons charged with crime, and particularly where incarceration in a jail or penitentiary multiplies the problems and hardship of the family of such person. Too frequently persons with unblemished records for good citizenship become unable to resist the habit of drinking liquor while driving a motor vehicle. The daily slaughter on the highways of this State and the Nation attests to the consequences. The problem is national, and the words of Shakespeare spoken hundreds of years before the motor age, are particularly significant today: "O God, that men should put an enemy in their mouths to steal away their brains."

It is at once apparent that if the driving while drunk habit is to be lessened and discouraged, or eliminated, the individual must realize in the beginning the probable consequences of the act to himself, to his family, and to his possible victims among the travelling public. So far as the courts and law enforcement agencies are concerned, their function in bringing about

this pause to think is the development of the knowledge among all persons that the penalty, on conviction, will be swift and sure.

█ From the evidence quoted and summarized, it is apparent that there is sufficient evidence to support the verdict of the jury. We find nothing in the record to justify an interference with such verdict.

█ The evidence of the prior conviction of driving while under the influence of intoxicating liquor was admissible and necessary, of course, in supporting the second offense charge. Tit. 47 O. S.A. § 93. And the evidence of conviction of additional traffic violations was admissible as affecting the credibility of the defendant. Atkinson v. State, 87 Okl.Cr. 142, 196 P.2d 522.

But complaint is made of the action of the court in permitting the county attorney to ask witnesses other than the plaintiff of their knowledge of the fact that the defendant had previously been convicted in the court of common pleas of Tulsa on a charge of drunk driving. It is urged that this tended to re-emphasize this fact for the purpose of prejudicing the jury against the defendant.

█ It had, of course, been stipulated by the defendant and he further admitted when testifying that he had been convicted previously of a similar charge. So there was no occasion for this question to be asked other witnesses. This was error, but we do not discover where such improper questioning was prejudicial to the defendant in this case, as the jury did not fix the penalty, but left that to the court. The jury could have fixed the punishment at a fine up to $1,000, and incarceration in the penitentiary for as much as two years, or by both such fine and imprisonment. The court, as we have seen, assessed the penalty at eight months confinement in the State penitentiary. So, in view of the positive evidence from the arresting officer, of defendant's guilt, and by reason of defendant's prior record for traffic offenses, we are unable to say that the error complained of had any bearing on the punishment assessed. If the punishment had been greater, we by reason of the improper questioning would have given serious consideration to a reduction, but as the record stands, and for the reasons given, the judgment appealed from must be, and the same is, affirmed.

JONES and BRETT, JJ., concur.

On Rehearing

PER CURIAM.

█ After further consideration of this matter on rehearing, the conclusion has been reached that justice would be served by modifying the judgment and sentence from 8 months in the penitentiary to a term of 4 months in the penitentiary.

It is therefore ordered that the judgment and sentence be modified to 4 months imprisonment in the state penitentiary and as thus modified the sentence is affirmed. Mandate will issue immediately.