**Robert E. WEEKLY, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. A–17627.**

Court of Criminal Appeals of Oklahoma.

April 18, 1973.

Rehearing Denied May 7, 1973.

Stansell, Whiteside, Altus, for appellant.

Larry Derryberry, Atty. Gen., Yvonne Sparger, Asst. Atty. Gen., for appellee.

OPINION

BUSSEY, Judge:

Appellant, Robert E. Weekly, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court of Jackson County, Case No. CRF–71–121, of the crime of Manslaughter in the First Degree. He was sentenced to serve four

(4) years in the state penitentiary. From that conviction, a timely appeal has been made to this Court.

On November 13, 1971, at approximately 10:00 p.m., two men, Guadalupe Aguera, the decedent, and Jesse DeLeon, entered the liquor store owned and operated by defendant. DeLeon left the store to wait outside while Aguera purchased a bottle of liquor from the defendant. Shortly thereafter, defendant attempted to persuade Aguera to leave the store since it was near closing time, but Aguera refused. DeLeon then reentered the store and attempted to get Aguera to leave with him, but again Aguera refused. DeLeon then exited the store and remained outside during the rest of the incident. Defendant testified that he began asking Aguera to leave the store because he had become nervous when Aguera refused to leave after transacting his business and that he took a pistol out from under the counter hoping to avert any trouble. Defendant went around the corner of the counter and again demanded that Aguera leave. Aguera then struggled with defendant for the gun causing the gun to fire accidentally and kill Aguera.

There was conflict in the testimony as to why the two men first entered the store. Defendant testified that when he went around the corner of the counter, Aguera said he intended to rob him. DeLeon testified that they did not enter the store to rob defendant, but had entered to get change for a twenty dollar bill. Defendant testified that there was never any mention of a twenty dollar bill; however, DeLeon testified that the defendant became angry over Aguera's request for change and that this was what prompted defendant to demand that Aguera leave the store.

After the shooting, defendant called the Jackson County Sheriff's office to report what had occurred. When the sheriff arrived, the defendant was placed under arrest. He was properly given his Miranda warnings, both in the police car and at the jail, and defendant elected to remain silent.

Defendant's first contention is that the trial court erred in allowing the prosecuting attorney to cross-examine defendant concerning statements he made to police officers.

Counsel contends that the questions asked defendant were an attempt by the prosecuting attorney to comment on and bring out defendant's failure to make statements to the police after the defendant's arrest. The questioning went as follows:

"Q. What did you think he was trying to do?

"A. I though he wanted the money.

"Q. All right, why didn't you report that to the police when you reported this incident?

"A. What?

"Q. Why didn't you———" (Tr. 30)

At this time, defense counsel objected, asserting that the defendant did not have to make a statement. He argued that the District Attorney was trying to make it look as if defendant was concealing something by not making a statement to the sheriff. The court ruled that the defendant had a constitutional right to remain silent, but that he could be asked if he reported the robbery to anyone. The prosecuting attorney then asked:

"Q. All right, Robert, I'll ask you, did you report it to anyone that this man was trying to rob you or that you thought he was trying to rob you?

"A. I started to tell Joe. We sat down and I started to tell Joe what happened. And I said, 'Joe, when I———'.

"Q. Just answer my question, be responsive. Did you report this to anyone?

"A. Yes.

"Q. That there had been a shooting.

"A. I called the officers.

"Q. Did you report to any officer that there had been an attempt to rob you?

"A. I didn't say anything, no." (Tr. 31–32)

It seems clear from these questions that the prosecuting attorney was not attempting to question about defendant's failure to talk to the sheriff after his arrest, but was attempting to question about statements the defendant had or had not made prior to arrest, to-wit: Whether, at the time of calling the sheriff, he told the sheriff that the deceased stated that he intended to rob him.

■ These questions, properly limited by the court in ruling on defense counsel's objections, were within the scope of defendant's direct examination. No error was committed in this regard.

Defendant's next proposition is that the prosecuting attorney made several improper statements in his closing argument. In Robison v. State, Okl.Cr., 430 P.2d 814, this Court stated:

"* * * [W]hen objectionable statement is made by the prosecution, it should be called to the attention of the court by timely objection, together with a request that the jury be instructed to disregard the improper statement and in the event that the objection is overruled, an exception should be taken to the ruling of the court, preserved and argued in the Motion for New Trial. When this is not done the matter cannot be presented for the first time in the Motion for New Trial and in the Petition-in-Error and briefs on appeal."

■ In the case at bar, defense counsel objected to some of the statements and did not object to others which he asserts are improper, but never did he request the court to instruct the jury to disregard the statements. Counsel, therefore, did not properly preserve the error and it cannot be considered on appeal.

Counsel for defendant cites Thurmond v. State, 57 Okl.Cr. 388, 48 P.2d 845, for the proposition that the trial court had the duty to stop improper argument and instruct the jury not to consider it if counsel fails to object; and he cites Gossett v. State, Okl.Cr., 373 P.2d 285, for the proposition that even if objection is not made, this Court will consider the error anyway, to ensure that there was a fair and impartial trial.

With these holdings, we cannot disagree; however, in line with the well known Harmless Error Doctrine, this Court will not reverse a conviction unless the error complained of is prejudicial.

■ In the case at bar, it would be impossible to determine whether there was prejudicial error because the record is so incomplete that a fair and complete analysis cannot be made.

This Court, in Needham v. State, 55 Okl.Cr. 430, 32 P.2d 92, stated:

" 'When an error has been committed upon the trial of a case, it is the duty of this court upon an inspection of the *entire record* to determine whether or not the defendant suffered any material· injury from such error.' " (Emphasis added)

Defendant has only included in the transcript the testimony of a few witnesses and the State's closing argument, and from this short out-of-context overview, it cannot be determined whether prejudicial error was committed. It would be impossible to determine the overall effect of the statements and if the statements were invited by defense counsel's closing argument. This Court, in Graham v. State, 80 Okl.Cr. 159, 157 P.2d 758, stated:

"It is well-settled that counsel for defendant must object to the alleged improper statements by the prosecutor at the time they are made and move the court to exclude such remarks from the consideration of the jury, and make a proper record so that this court may determine from an examination of the record whether the alleged improper remarks were actually made, and, if so, whether they were invited or provoked by oppposing counsel's remarks."

In the instant case, counsel for defendant not only failed to object properly, but did not make a proper record so that this

Court can determine whether prejudicial error has been committed.

The judgment and sentence is therefore affirmed.

BLISS, P. J., concurs.

BRETT, J., dissents.

BRETT, Judge (dissents).

I respectfully dissent to this decision because I believe defendant's constitutional rights were so jeopardized that he did not receive due process of law.

I believe both of defendant's propositions are well taken. In support of his first proposition defendant cites this Court's decision in Messier v. State, Okl.Cr., 428 P. 2d 338, 341. (1967). In the Messier case the defendant complained that her constitutional rights were violated when she was cross-examined concerning her refusal to testify at an earlier preliminary hearing on another case, claiming her constitutional right against self-incrimination. The Messier case was reversed on that proposition alone. Judge Nix stated in that unanimous decision:

"This Court has never had an opportunity to pass upon this question, but the Supreme Court of the United States has spoken in this regard numerous times.

"In the case of Grunewald v. United States, 353 U.S. 391, 77 S.Ct. 963, 1 L. Ed.2d 931, 62 A.L.R.2d 1344, where Halperin, one of the defendants, took the stand to testify in his own behalf; on cross-examination the prosecuting attorney asked him the same question that he had refused to answer before a grand jury. This time, Halperin answered the question: His answers tended to show his innocence of any wrong doing. The Government was permitted, over objection, to draw from him the fact that he had previously refused to answer these questions on the grounds that his answers might tend to incriminate him. The Court held that under the circumstances, it was prejudicial error for the trial judge to permit cross-examination of petitioner relative to taking the Fifth Amendment privilege before the grand jury, and that Halperin must be granted a new trial. In a special concurring opinion, Justice Black, joined by Justice Douglas and Justice Brennan, had this to say:

'I agree with the Court that use of this claim of constitutional privilege to reflect upon Halperin's credibility was error, but I do not, like the Court, rest my conclusion on the special circumstances of this case. I can think of no special circumstances that would justify use of a constitutional privilege to discredit or convict a person who asserts it. The value of constitutional privileges is largely destroyed if persons can be penalized for relying on them.

'It seems peculiarly incongruous and indefensible for courts which exist and act only under the Constitution to draw inferences of lack of honesty from invocation of a privilege deemed worthy of enshrinement in the Constitution.' "

In the instant case, defendant offered to explain, but the prosecutor limited him to a "yes" or "no" answer. On redirect examination, the prejudice could not be overcome. In this case, defendant is being penalized for exercising his constitutional right to remain silent upon arrest.

Concerning defendant's second proposition, the errors complained of by defendant are of such fundamental nature that no objection was required. If it was improper to cross-examine the defendant concerning his remaining silent upon arrest, then it was equally improper for the prosecutor to dwell on that same fact in closing argument. Defendant's brief cites five lengthy examples of the prosecutor's improper argument. In Thurmond v. State, 57 Okl.Cr. 388, 48 P.2d 845 (1935), the first, second and fourth paragraphs to the Court's syllabus state:

"1. Under the Constitution and laws of this state the defendant is entitled to

have the opportunity of consulting with counsel at all stages of the proceedings, from the time he is arrested until the final disposition of the case, and he is not required and does not have to make a statement to the officers or the court. He may sit mute and say nothing, and the fact that he does not make a statement to the officers is not and cannot be construed as evidence of guilt, and *it is improper for the prosecuting officer to argue to the jury the fact that the defendant did not make a statement to the officers.* [Emphasis added.]

"2. However strong the prosecuting attorney's belief of the prisoner's guilt may be, he must remember that unfair trials may happen to result in doing justice in particular cases, but the justice so obtained is dangerous to the whole community. It matters not how guilty the prisoner on trial charged with crime may be, he is entitled to a fair and impartial trial, and a judgment of conviction for manslaughter in the first degree and imposition of a four-year sentence may be as great a wrong to society if unfairly secured, although the accused may be guilty, as it would be for such person to go unwhipped of justice.

\* \* \* \* \* \*

"4. Where the record shows that counsel for the state, in the prosecution of a person charged with crime, has been guilty of conduct calculated to inflame the minds of the jurors and arouse prejudice or passion against the defendant, or to prevent the accused having a fair and impartial trial, conviction will be set aside and a new trial granted."

The Attorney General argues in his brief that the questions and answers propounded to the defendant in this instance was a part of the res gestae, and therefore proper. He reasons further, the questions being proper, then the argument to the jury was likewise proper. The difficulty with the Attorney General's argument is that the rule of res gestae does not supersede defendant's constitutional rights, provided by both the United States Constitution and the Constitution of the State of Oklahoma.

Therefore, I respectfully dissent to this decision. I believe it should be reversed and remanded for a new trial.